MCLAUGHLIN v. MAJESTIC DEVELOPMENT CORPORATION.

1. MORTGAGES—DEED AS MORTGAGE.
   Deed of land worth from $14,000 to $20,000 by development
   company to finance company for $3,000, with 90-day option
   to repurchase at $4,000 with interest, *held*, under the circum-
   stances, and in view of relations of parties, to have been
   mortgage rather than sale.

2. VENDOR AND PURCHASER—NOTICE—BONA FIDE PURCHASER.
   Stockholder to whom finance company deeded land after record
   in register of deeds' office had been made to show claim
   that deed of said land to finance company was in reality a
   mortgage, and who gave back his note but had paid nothing on
   it, is not a *bona fide* purchaser.

Appeal from Antrim; Gilbert (Parm C.), J. Sub-
mitted June 5, 1929. (Docket No. 56, Calendar No.
34,315.) Decided July 8, 1929. Rehearing denied
September 4, 1929.

Bill by Cecil R. McLaughlin against the Majestic
Development Corporation and another to quiet title
to land. From a decree for plaintiff, defendants ap-
peal. Reversed.

*S. Homer Ferguson* and *Frank B. Ferguson,* for
plaintiff.

*M. W. Underwood* and *Harry E. Mudge,* for de-
fendants.

FELLOWS, J. The question here presented is one
of fact pure and simple. It is whether a deed from
defendant company to a finance company for $3,000
with a 90-day option to repurchase at $4,000 with
interest, of land which the finance company's only

valuation witness fixed the value of at upwards of $13,500, and which the overwhelming testimony shows was worth around $20,000, was in fact a sale of the land or a mortgage with the manipulations indulged in purely with intent to evade the statute of usury. In 1925, the Majestic Development Corporation, hereafter called the development company, purchased land in Antrim county having a frontage on Torch Lake of 3,470 feet. In 1926, there was a very marked increase in the value of such frontage, and the demand for it was brisk. The testimony on this subject of value we will discuss presently. The development company was hard pressed for money. All agree that the officers of that company approached the officers of the Commercial Bond & Mortgage Company, hereafter called the finance company, for a loan of $3,000. Two witnesses connected with the development company testify that the transaction was a loan, and two witnesses connected with the finance company insist that it was a sale. In this situation much depends on whether what was actually done was the usual thing done in case of a sale, what papers were prepared and for what purpose, what were the relations of the parties, and all surrounding circumstances. The learned trial judge excluded much testimony which would have been helpful both to him and to us in solving the question before us, and most of it was not taken or preserved under the terms of the judicature act (3 Comp. Laws 1915, §§ 12003 *et seq.*). However, there is enough in this record to satisfy us beyond a peradventure that notwithstanding the lip service of the officers of the finance company for their company, and the unusual steps taken by them to build up evidence of a sale, the transaction constituted a mortgage, and nothing else.

We shall now take up some of the earmarks which indelibly stamp the transaction as a loan.

It is not in dispute that the two companies had dealt before, and while the trial judge refused, and as we view it improperly refused, defendants permission to show their method of dealing, we think the exhibits and the testimony of the finance company's president on cross-examination establish that such prior dealings had been loans, and except as to some details were handled as was this transaction, although the president says that a contract similar to the one here used was not made and the present deal was "stiffer" than the other. Indeed, a part of the $3,000 which was named as the consideration in the deed was used to pay the balance of $675 together with $5 interest thereon which was in reality a prior loan from the finance company to the development corporation to secure which a deed with an option back had been executed.

The disparity between the value of the land and the purchase price named in the deed is too great to evidence a *bona fide* sale. The officers of the finance company had never seen the property, but the president testifies that he consulted a Mr. Weller who was familiar with values in this resort region and who entertained the view that the frontage was worth $2 a foot, which would make the property worth nearly $7,000. Mr. Weller, however, was not called as a witness. A Mr. Jackson was called by plaintiff, and he at first fixed the value at $5 to $6 a foot front, but after persistent hammering reduced the figure to $4 a foot. Several dealers of considerable experience from the locality fixed the value at from $5 to $6 a foot, and we are satisfied the land was worth from $14,000 to $20,000; probably the latter figure

is correct. We are charitable enough to assume that the officers of the finance company did not take advantage of the development corporation's condition and buy outright this valuable property for $3,000, and that their rapacity would have been satisfied at the time with a $1,000 bonus together with interest on a 90-day loan of $3,000. The finance company did not take possession, but during the season of 1926 the development corporation was in possession, made some improvements, and controlled what few crops were raised on it.

The manner of handling the deal was out of the ordinary for the purchase and sale of real estate. While the articles of association of the finance company authorized it to purchase real estate, its name and dealings indicate that it was a finance company pure and simple, doing the business of such a company in the usual, or possibly unusual, way. Plaintiff's counsel point to the following language in a contract between the parties as settling the proposition that the transaction was a sale:

"Whereas, second party has made an offer to first party of three thousand ($3,000.00) dollars cash, for a conveyance of said premises by warranty deed free and clear of all incumbrances, of every kind and nature, which said offer is the best offer which has been made to first party, and which price of three thousand ($3,000.00) dollars cash is the best price now obtainable for said premises."

But the contract containing the language just quoted bears the same date and was signed at the same time the deed was executed. What earthly use such a contract, executed simultaneously with the execution of the deed, had is beyond finding out unless it was to build up a paper case and cover.

up the taking of the $1,000 bonus. The option was on a printed form of the same tenor as another option appearing in the record signed by the finance company. From this it is inferable that the finance company had these blanks on hand and used them in its business of loaning money. The president of the finance company testifies that, when approached for a loan, he refused, and protested that the deal had to be made just as it was made or not at all. Quite likely this was the usual method of doing business when large bonuses were exacted, and doubtless he did protest, but it was a protest for effect, for the making a record. He "protesteth too much." Plaintiff is a stockholder of the finance company. A deed was given him after a record had been made in the office of the register of deeds by defendants showing the claim of the development corporation that the deed was in reality a mortgage. He gave back his note but has paid nothing on it. He is not a *bona fide* purchaser.

Brushing aside the manipulations skilfully conducted and the cobwebs designed to produce doubt, we reach the conclusion that the decree appealed from must be reversed and one here entered fixing the character of the transaction as one of loan, and the instruments before us as constituting a mortgage; defendants to have costs of both courts.

NORTH, C. J., and FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.